CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

December 01, 2025

LAURA A. AUSTIN, CLERK
BY: _/s/ Erica Jones_
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LINDA M.,[1] ) | |
| ) | Civil Action No. 7:25-CV-00138 |
| Plaintiff, ) | |
| ) | |
| v. ) | <u>REPORT & RECOMMENDATION</u> |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | By: C. Kailani Memmer |
| ) | United States Magistrate Judge |
| Defendant. ) | |

Plaintiff Linda M. (Linda), by counsel, filed this action challenging the final decision of the Commissioner of Social Security (Commissioner) finding her not disabled and therefore ineligible for disability insurance benefits (DIB). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument; therefore, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the Administrative Law Judge (ALJ) applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

In November 2021, Linda applied for disability insurance benefits alleging her disability began on March 29, 2020. R. 176. Linda's claim was denied by the Commissioner at the initial and reconsideration levels of administrative review. *See* R. 59–77. On April 11, 2024, ALJ John Kooser held an administrative hearing to consider Linda's claims. R. 30–58. Counsel represented Linda at the hearing, which included testimony from Linda and vocational expert Jeannie J. Deal. *Id*. On May 1, 2024, the ALJ

entered a decision analyzing Linda's claims under the familiar five-step process[2] and denied her request for benefits. R. 14–29.

At the first step, the ALJ found Linda had not engaged in substantial gainful activity since March 29, 2020, the alleged onset date. R. 19. At the second step, the ALJ found Linda had the following severe impairments: Guillain-Barre syndrome (GBS), neuropathy, arthralgia, hypothyroidism, obesity, depressive disorder, bipolar disorder, borderline personality disorder, and attention deficit hyperactivity disorder (ADHD). *Id.* At the third step, the ALJ found Linda's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 19–21. The ALJ determined that Linda retained the residual functional capacity (RFC) to perform light work[3] with the following exceptions:

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

[3] "Light work" is defined as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> [S]he is limited to no more than frequent fine and gross
> bilaterial manual dexterity; no occupational hazards such as
> unprotected heights, dangerous machinery, ropes, ladders, or
> scaffolds; she is limited to jobs involving no more than simple,
> routine, repetitive tasks, that would be performed in a low
> stress work environment, defined as one involving no high
> volume productivity requirements and very infrequent
> unexpected changes; and no more than occasional interaction
> with the public, co-workers, or supervisors.

R. 21. At the fourth step, the ALJ determined that Linda was unable to perform any past
relevant work as a courtesy booth cashier, cashier, and sales clerk. R. 24. At the fifth step,
the ALJ identified jobs in significant numbers in the national economy that Linda could
perform, including price marker, router, and routing clerk. R. 24–25. Thus, the ALJ
concluded a finding of "not disabled" was appropriate. R. 25. Linda appealed the ALJ's
decision, and on December 30, 2024, the Appeals Council denied her request for review.
R. 1–6. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts,
the court dispenses with a lengthy recitation of the medical history from the relevant
period. To the extent specific records or information are relevant to or at issue in this case,
they are addressed within the Analysis section below.

## ANALYSIS

Linda contends the ALJ erred as a matter of law on two grounds. First, Linda
claims the ALJ failed to properly evaluate the supportability and consistency of the
medical opinion provided by Christine Jordan, M.D., in violation of 20 C.F.R. §
404.1520c. Next, Linda asserts the Commissioner provided only a conclusory evaluation
of Linda's subjective testimony, in violation of 20 C.F.R. § 404.1529 and SSR 16-3p. The

Commissioner claims the disability denial decision should be affirmed as the ALJ properly applied the legal standards and such decision is supported by substantial evidence.

To start, the ALJ's opinion is woefully lacking in the necessary analysis for the court to evaluate whether substantial evidence supports the ALJ's findings in this case. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023). The Court is tasked with determining whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Id*. As such, an ALJ must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quotation omitted). Here, the ALJ mainly reasserts mostly favorable evidence and then states his conclusions without providing the required "logical bridge" of analysis. *See* R. 19–25.

## I.    The ALJ failed to properly evaluate the medical opinion of Christine Jordan, M.D., in violation of 20 C.F.R. § 404.1520c.

As to the first assignment of error, Linda claims the ALJ failed to properly evaluate the supportability and consistency of Christine Jordan, M.D.'s medical opinion in violation of 20 C.F.R. § 404.1520c. As discussed below, I agree.

When determining the persuasiveness of medical opinions, the ALJ must consider a list of five factors pursuant to 20 C.F.R. § 404.1520c(c)(1)–(5). Of the five factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(a), (b)(2). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical

sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

On March 22, 2024, Dr. Jordan of Lewis Gale Internal Medicine completed a medical source statement regarding Linda's diagnoses of depression and anxiety disorder. R. 753–54. Dr. Jordan opined that Linda had no useful ability to function, an extreme limitation,[4] in maintaining regular attendance and being punctual within customary, usually strict tolerances, and dealing with normal work stress. R. 753. She further opined that Linda was unable to meet competitive standards in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* She also found that Linda was seriously limited in accepting instructions and responding appropriately to criticism from supervisors and responding appropriately to changes in a routine work setting. *Id.*

Dr. Jordan noted that when Linda's anxiety is high, she experiences nausea which causes Linda issues regarding attendance and maintaining a regular work schedule. R. 754. She further specified that Linda's symptoms related to her anxiety and depression were severe enough to frequently (34% to 66% of an 8-hour workday) interfere with her attention and concentration needed to perform even simple work tasks. *Id.* Dr. Jordan noted it was "unknown" how often she would anticipate Linda would be absent from work based upon her limitations. *Id.*

---

[4] Dr. Jordan's medical source statement is mainly a check box form. The check box portion provides the following descriptions: (1) "*no useful ability to function*, an extreme limitation" means the "patient cannot perform [the] activity on a regular, reliable and sustained schedule in a regular work setting"; (2) "*unable to meet competition standards*" means the "patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week"; (3) "*seriously limited*" means the "patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week; and (4) "*limited but satisfactory*" means the "patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week." R. 753.

In addressing Dr. Jordan's medical opinion, the ALJ provided the following limited statements:

> The record contains a form completed by a treatment provider identifying disabling limitations resulting from claimant's mental health impairments (Exhibit 13F). This opinion is not persuasive as it is not supported by the evidence of record, including the author's own treatment notes.

R. 23.[5]

Although the ALJ briefly refers to the supportability and consistency of Dr. Jordan's opinion, there is no accompanying *discussion* on how he analyzed these factors leaving the Court unable to engage in meaningful review. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will <u>explain</u> how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision.") (emphasis added). Here, the ALJ's decision is completely devoid of any analysis of Dr. Jordan's findings other than the conclusory statement that the "opinion is not persuasive as it is not supported by the evidence of record, including the author's own treatment notes." R. 23. Such conclusory statement provides nothing for this court to review. *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (noting that "appellate *re*view is possible only when someone has first articulated a *view*.").

The Commissioner would have this court ignore the applicable regulations and infer the ALJ's intended explanation based upon the ALJ's summary of the medical evidence which proceeded his conclusions regarding the persuasiveness of the medical opinion evidence. (*See* Comm'r Br. at 9–12, ECF No. 13.) Although the Commissioner is correct that the court is to construe the ALJ's decision "as a whole," *see Keene v. Berryhill*,

---

[5] Notably, the ALJ neither summarized Dr. Jordan's opinions, nor mentioned Dr. Jordan by name in his decision.

732 Fed. App'x 174, 177 (4th Cir. 2018) ("We must read the ALJ's decision as a whole."), such requirement does not negate the ALJ's duty to provide an <u>explanation</u> addressing how he reached his conclusions regarding the supportability and consistency factors. "Indeed, it is the responsibility of the ALJ to 'build an accurate and logical bridge from the evidence to his conclusion' that [Dr. Jordan's] findings are unpersuasive." *Jeremy C. v. Kijakazi*, No. 7:22-CV-00029, 2023 WL 2474217, at *6 (W.D. Va. Mar. 13, 2023) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

In sum, the ALJ's consideration of Dr. Jordan's medical opinion suffers from the "all too common" problem of failing to "show [his] work." *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). Absent any explanation by the ALJ as to whether Dr. Jordan's opinion is consistent and supported, as required by the applicable regulations, the court is unable to meaningfully review how the ALJ evaluated the persuasiveness of her opinion and whether substantial evidence supports the ALJ's determination. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (noting that missing analysis "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings."). As meaningful review is not possible in this case, I find such error is harmful and warrants remand. *See Patterson*, 846 F.3d at 662 (explaining that failure to explain is usually harmful "because such failure prevents, or at least substantially hinders, judicial review").[6]

---

[6] Linda also claims the ALJ erred in his assessment of Linda's subjective allegations in violation of 20 C.F.R. § 404.1529 and SSR 16-3p. Because the Court has determined that the ALJ erred in his consideration of Dr. Jordan's medical opinion warranting remand, the Court declines to further address this remaining claim of error. However, upon remand, the ALJ should examine this claim of error to reconsider and re-evaluate the evidence in whole. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## **CONCLUSION**

For the above reasons, I recommend that the decision of the Commissioner be

**REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: December 1, 2025

C. Kailani Memmer
United States Magistrate Judge

9